## CITY OF PONCA CITY et al. v. GRIMES et al.

No. 21066.  Opinion Filed June 3, 1930.

Keaton, Wells, Johnston & Barnes, for petitioners.

J. Berry King, Atty. Gen., and Robt. D. Crowe, Asst. Atty. Gen., for respondents.

HEFNER, J.  This is an original proceeding by the Travelers Insurance Company to review an award of the Industrial Commission in favor of T. D. Grimes, claimant, for an injury to the claimant sustained on the 26th day of February, 1929, while employed by Ponca City in the city park department as a teamster, engaged in hauling fertilizer in the city park to be used in the upkeep of the park. After hearing the evidence the Commission awarded the claimant compensation. The petitioner urges that the employment in which the claimant was engaged at the time of the injury was not a hazardous occupation within the meaning of the Compensation Act.

Sections 7283 and 7284, C. O. S. 1921, are the applicable sections, and the applicable portions thereof are as follows:

"Compensation provided for in this act shall be payable for injuries sustained by employees engaged in the following hazardous employments, to wit: Factories, cotton gins, mills and workshops where machinery is used; printing, electrotyping, photo-engraving and stereotyping plants where machinery is used; foundries, blast furnaces, mines, wells, gas works, gasoline plants, oil refineries and allied plants and works, water works, reduction works, elevators, dredges,

smelters, powder works, glass factories, laundries operated by power, creameries operated by power, quarries, construction and engineering works, construction and operation of pipe lines, tanneries, paper mills, transfer and storage, construction of public roads, wholesale mercantile establishments, employees employed exclusively as salesmen or clerical workers excepted; operation and repair of elevators in office buildings; logging, lumbering, street and interurban railroads not engaged in interstate commerce, buildings being constructed, repaired or demolished, farm buildings and farm improvements excepted; telegraph, telephone, electric light or power plants or lines; steam heating or power plants and railroads not engaged in interstate commerce."

As used in this act:

"1. 'Hazardous employment' shall mean manual or mechanical work or labor connected with or incident to one of the industries, plants, factories, lines, occupations or trades, mentioned in section 2 of this act, but shall not include any one engaged in agriculture, horticulture, or dairy or stock raising or in operating any steam railroad engaged in interstate commerce."

The only provisions of the statute that any claim could be made for compensation of the claimant would be under the provision for "water works," or "construction and engineering works," or "construction of public roads." There is no other provision that could in any way relate to the business in which the claimant was engaged. He was employed as a teamster and engaged in hauling fertilizer for the general upkeep of the park. A public park is generally used by the public for rest, recreation, etc. "Construction and engineering works" would undoubtedly include such works as laying of sewers, building of bridges, construction of dams, etc. "Public roads" has been defined as a generic term, including "all kinds of public ways, such as county and township roads, streets, alleys, township and plank roads, turnpike or gravel roads, tramways, ferries, canals, navigable rivers, including also railroads." Shannon v. Martin (Ga.) 139 S. E. 671, also as a "public way for the use of the public in general, for passage and traffic." Omaha & Council Bluffs St. Ry. Co. v. City of Omaha (Neb.) 208 N. W. 123. And as "any public highway or thoroughfare used for the passage of the public." Canard v. State (Ark.). 298 S. W. 24. The term carries with it the idea of a thoroughfare to be used for traffic, for the passage of the public. Without attempting to say just what employment is included in the construction of such public roads, it seems

clear that a public park is not a public road.

The evidence shows that the claimant was engaged as a teamster in the hauling of fertilizer for the general upkeep of the park. While it is our duty to construe the act liberally in his favor, we do not think the Legislature included this kind of employment in its definition of hazardous employment, and if it was not included in the legislative act, it is equally our duty not to include it by judicial construction.

The Attorney General in his brief in behalf of the claimant says:

"Sections 7283 and 7284, C. O. S. 1921, are the applicable sections of the act. We have carefully studied both of these sections and do not find the employment of park tender or park laborer included specifically in said sections. We are also unable to find any adjudicated cases holding that a park laborer is engaged in a hazardous employment."

Here is a frank admission on his part that the statute does not specifically include a teamster engaged in hauling fertilizer for the general upkeep of the park. A very similar question was recently before this court in the case of Mashburn v. City of Grandfield, 142 Okla. 247, 286 Pac. 789. The syllabus in that case is as follows:

"Under Comp. Stat. 1921, secs. 7283, 7284, a municipality becomes subject to the obligations imposed by the Workmen's Compensation Act only when such municipality is engaged in one of the hazardous occupations described or enumerated in said section 7283 of the statutes.

"A town marshal or night watchman guarding the streets and general property in the town is not an employee of the city as a workman for wages engaged in one of the hazardous occupations enumerated in the statutes; and, if injured in the course of his duties as a town marshal or town watchman, is not entitled to recover compensation under the Workmen's Compensation Act."

In the body of the opinion it is said:

"It must be borne in mind that the Workmen's Compensation Acts are in derogation of the common law and in derogation of a common right of action in the courts. In other words, it takes from the citizen his right to be heard in the law courts upon principles and procedure almost as old as Anglo-Saxon civilization itself; and while the law will be given, and is given, a liberal construction in favor of the class for whom it was apparently, or supposedly, enacted to protect, yet the courts are without authority, and should be without authority, to ex-

tend its operation to classes and persons beyond which the Legislature has expressly or by clear implication designated."

Under the rule announced in the above case we do not think the claimant can recover herein, and the Commission is directed to vacate its order allowing him compensation and dismiss his claim.

HUNT, CLARK, RILEY, CULLISON, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., and LESTER, V. C. J., absent.