**CITY OF TULSA, Plaintiff in Error,**

**v.**

**George W. GOINS, Defendant in Error.**

**No. 41265.**

Supreme Court of Oklahoma.

Oct. 17, 1967.

Houston, Klein & Davidson, by William D. Borders and Richard T. Sonberg, Tulsa, Waldo F. Bales, Asst. City Atty., City of Tulsa, for plaintiff in error.

Berringer, Briggs & Barnes, by A. A. Berringer and Dale J. Briggs, Tulsa, for defendant in error.

LAVENDER, Justice.

This is an action for personal injuries. The plaintiff was a patron of Tulsa's Newblock Park swimming pool at the time of his injury. The park and swimming pool were solely owned and operated by the defendant, City of Tulsa. The plaintiff was returning from the poolside to the men's dressing room when he slipped down on the wet floor of a connecting hall or "tunnel" and fell. A rubber mat had been removed by some person.

The case was tried to a jury and resulted in a verdict for plaintiff upon which the trial court entered judgment. Defendant City's motion for new trial was overruled and the latter has appealed to this court.

The defendant (the parties will be referred to by their trial court designations) alleges as the principal ground for reversal that its demurrer to plaintiff's petition should have been sustained because pursuant to 11 O.S.1961, § 1372 and 11 O.S. 1961, § 545.6 the operation (and maintenance) of the said swimming pool by the

City was a governmental function and the City was therefore immune from suits of this nature.

This court has expressed the view that in operating and maintaining a city park a city acts in a proprietary capacity and is liable for negligence to the same extent as any private corporation. For example, see City of Sapulpa v. Young (1931), 147 Okl. 179, 296 P. 418; Oklahoma City v. State Industrial Commission, et al. (1931), 147 Okl. 261, 298 P. 577.

The last sentence of Section 1372 (of 11 O.S.1961) does not mean that in the operation of the facilities referred to therein that a city acts in a governmental capacity and is immune from suits for negligence.

Section 545.6 (11 O.S.1961) when read in connection with the other pertinent sections of what was originally known as the "Oklahoma Public Recreation Act" (11 O.S.1961, §§ 545.1 to 545.17, inclusive) provides that certain governmental units may jointly establish and maintain recreational facilities, including swimming pools, and the last sentence of Section 545.6 provides: " * * * All such facilities and activities shall be governmental in nature, and no liability for negligence shall accrue against any participating governmental unit."

We have considered the above words within the context of the Act and are of the opinion that the ordinarily accepted meaning of the words should control. See 25 O.S.1961, § 1. "Participating", according to Webster's New International Dictionary, Second Edition, means: "To have a share in common * * *"—"To take apart, portion, or share * * * to participate; share."

We are of the view that the words, "* * * any participating governmental unit", quoted above, Section 545.6, supra, are words limiting the applicability of said grant of immunity to cities and other governmental units which are actually participating in the maintenance or operation of "* * * All such facilities and activities * * *" (meaning jointly established and maintained recreational facilities—see Section 545.4 of 11 O.S.1961).

If it had been, as the City contends, that the intent of the Legislature was that both jointly operated as well as singly operated recreational facilities should be immune from liability as governmental functions, such could easily have been accomplished by so providing in Section 545.4. The last mentioned section refers to both single and joint projects.

The words "participating governmental units", appearing as they do in the sentence pertaining to jointly operated facilities, would be rendered meaningless if we ascribed to them the intent contended for by the City. If the immunity from liability for negligence was meant to extend to both singly as well as jointly operated facilities then why were the quoted words used? It is a well established rule of statutory construction that a construction should be resorted to which renders every word and sentence operative, rather than one which renders some words inoperative or nugatory. State ex rel. Board of Education of Independent School District No. 1 of Grady County, et al. v. State Board of Education (1955) Okl., 287 P.2d 704.

We are of the opinion that the Legislative declaration of governmental immunity from liability for negligence applies only to recreational facilities jointly established and operated by two or more governmental units. Accordingly, the City's contention to the contrary is not well taken.

Defendant City's second proposition is in effect that no culpable negligence was shown on part of the City and that there was no notice of the condition shown to have been actually or constructively imparted to the City.

According to the evidence, the tunnel in which plaintiff fell joined the men's dressing room with the pool. The floor of that tunnel was wet from the feet of patrons who had left the pool and returned to the dressing room. The City had apparently installed a series of rather large rubber mats

on the floor of the tunnel and one of these mats had been removed. The plaintiff fell in the area which had been exposed by the removal of the mat.

It was not clear from the evidence whether the employees of the City had removed the mat or not—at least there was no direct evidence one way or the other—and it is this lack of positive evidence that the City says is fatal to the plaintiff's cause and should have required the trial court to sustain a demurrer to the evidence.

It was established that the City had some sixteen employees continuously on duty at the pool; that they or some of them occasionally patrolled this hallway; and that these mats were never supposed to be taken up except when the janitors swept the floor and hosed it to get it clean. In those instances the mats were supposed to be replaced immediately.

■ We think the circumstances in evidence are sufficient to support an inference that the City employees removed the mat—not some patron of the pool—and that the failure to replace it before the plaintiff fell constituted negligence on the part of the City—considering the circumstances of the case, including the hazards to patrons of the pool who would thus be forced to use a smooth, wet, and slippery floor.

■ The law does not require every fact and circumstance which make up a case of negligence to be proved by positive evidence. Proof of such facts may rest entirely in circumstances; in other words, circumstantial evidence alone may authorize a finding of negligence. Towery v. Guffey (1961), Okl., 358 P.2d 812; 38 Am.Jur. "Negligence" § 333, page 1032.

We are of the opinion the trial court did not err in overruling the City's demurrer to the evidence of the plaintiff.

The City's third and final proposition concerns alleged error on the part of the trial court in instructing the jury that the City owed a duty to use "great care" (as opposed to merely "ordinary care") to maintain the premises in a reasonably safe condition for the intended use of them by the patrons.

The City points out that the plaintiff based his cause of action upon failure of the defendant to exercise "reasonable and ordinary care."

That only "ordinary care" is required on the part of a proprietor toward his business invitee (the City contends) has been the holding of this court in many cases. Defendant calls our attention to, among others, Safeway Stores, Inc. v. Criner (1963) Okl., 380 P.2d 712; City of Anadarko v. Swain, et al. (1914) 42 Okl. 741, 142 P. 1104.

We are impressed by reading the cited cases and others of similar import that this court has alternately referred to the degree of care required as "ordinary care", "reasonable care", and "* * * a reasonably safe condition (considering) its intended use." See City of Guymon v. Finicum (1953) Okl., 265 P.2d 706.

■ The "degree" of care required, as plain common sense would indicate, is that degree commensurate with the circumstances, as for example in Sand Springs Park v. Schrader, et al. (1912) 82 Okl. 244, 198 P. 983, we held the court's instruction not erroneous which imposed upon the park "the highest degree of care" in the maintenance of a rollercoaster. The degree of care commensurate with the circumstances is that degree which would keep the premises in a reasonably safe condition considering the intended use of the premises by patrons.

■ Thus "ordinary care" may actually mean, in a given set of circumstances, "great care", dependent upon what a reasonably prudent person would have done (or would not have done) under the circumstances; and although technically it is for the jury to determine, we do not deem it reversible error, under the circumstances in the cause before us, for the trial court to instruct the jury as it did.

We are of the opinion that reasonable men would agree under the circumstances

of this case that a higher degree of care than that usually exercised by persons of ordinary prudence about their affairs of only ordinary importance was required. See 25 O.S.1961, § 3 for definition of "great care."

 The plaintiff's petition alleged, inter alia, "the defendant failed to use that degree of care and caution which an ordinarily prudent person would have exercised under the same or similar circumstances." We hold that such pleading did not limit the degree of care to that of only "ordinary care" (as defined by 25 O.S.1961, § 3, supra).

We hold that the trial court did not commit reversible error in refusing to give the requested instructions and in giving, instead, the instructions imposing upon the defendant City the duty of "great care", or, "great degree of care" for the safety of business invitees, including the plaintiff.

Judgment affirmed.

IRWIN, V. C. J., and DAVISON, WILLIAMS, HODGES, and McINERY, JJ., concur.

JACKSON, C. J., and BLACKBIRD and BERRY, JJ., dissent.